UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re: Harmony Holding Group, LLC          Chapter 11

                      Debtor.         Case No. 8-23-73500-las
----------------------------------------------------------x

## MEMORANDUM DECISION DETERMINING THAT AUTOMATIC STAY DOES NOT PRECLUDE DELIVERY OF REFEREE'S DEED TO PURCHASER AT PREPETITION FORECLOSURE SALE

Before the Court is the motion of Carmichael JY L.P. ("Lender") filed on September 27, 2023 (the "Stay Relief Motion" or "Mot.") [Dkt. No. 16] seeking entry of an order: (1) declaring that the automatic stay imposed under 11 U.S.C. § 362(a) does not preclude the transfer of the deed to the successful purchaser at a prepetition foreclosure sale of Debtor's real property located at 950 Jericho Turnpike, Westbury, New York (the "Property") or, if the automatic stay applies, (i) terminating the stay pursuant to 11 U.S.C. § 362(d)(1) and/or (d)(2) to allow the transfer of the deed to the Property and (ii) granting *in rem* relief pursuant to 11 U.S.C. § 362(d)(4)[1] with respect to the Property; or (2) in the alternative, dismissing this chapter 11 case. Debtor did not file timely written opposition to the Stay Relief Motion.[2] The Court heard oral argument on October 19, 2023 (the "October 19 Hearing").

After careful consideration of the Stay Relief Motion, the parties' arguments, and the relevant law, and for the reasons set forth on the record of the October 19

---

[1] All statutory references to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., will hereinafter be referred to as "§ (section number)."

[2] Although the Debtor did not file written opposition to the Stay Relief Motion, the Court provided counsel an opportunity at the October 19 Hearing to address the merits of the relief requested by Lender.

Hearing, the Court determined that: (i) the automatic stay imposed by § 362(a) did not preclude the post-petition delivery of the deed to the successful purchaser of the Property at the prepetition foreclosure sale, and (ii) even if the automatic stay prevented the post-petition delivery of the deed, stay relief was warranted under § 362(d)(1) and (d)(2).

The Court entered an order granting the Stay Relief Motion on October 23, 2023 (the "October 23 Order") consistent with its findings and conclusions at the October 19 Hearing. [Dkt. No. 38]. This Memorandum Decision explains further the bases of the Court's ruling. It does not change the substance of the Court's ruling at the conclusion of the October 19 Hearing and as set forth in the October 23 Order.

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and the Standing Order of Reference of the United States District Court for the Eastern District of New York, dated August 28, 1986 (Weinstein, C.J.), as amended by Order dated December 5, 2012 (Amon, C.J.) entered in accordance with 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(G) in which final orders or judgment may be entered by this Court pursuant to 28 U.S.C. § 157(b)(1).

## BACKGROUND

The relevant facts are not in dispute except as otherwise noted.[3] On or about July 29, 2008, Debtor executed and delivered a note in the amount of $385,000 to

---

[3] This section includes relevant facts incorporated from the Declaration of Alexander Hofstedter, a general partner of Lender ("Hofstedter Decl."), filed in the First Bankruptcy Case (as defined herein) and appended to the Stay Relief Motion, as well as the exhibits thereto ("Hofstedter Ex.").

Flushing Savings Bank, FSB (the "Note"). Hofstedter Decl. ¶ 3. The Note evidenced a loan made by Flushing to Debtor on July 29, 2008, in the principal amount of $385,000. *Id.* On the same day, Debtor executed a mortgage (the "Mortgage") securing the Note and encumbering the Property. *Id.* ¶ 4, Hofstedter Ex. A. The Mortgage was recorded in the Office of the Nassau County Clerk on August 13, 2008. *Id.* ¶ 5.

The Note and Mortgage were assigned to Lender on May 19, 2017. *Id.*  ¶ 7, Hofstedter Ex. B. Lender commenced a foreclosure action with respect to the Property in state court on April 20, 2017. *Id.* ¶ 12, Hofstedter Ex. D; Mot. ¶ 6. Interest and real estate taxes continued to accrue on the Property. Mot. ¶ 6. Lender obtained a judgment of foreclosure and sale on January 15, 2019. *Id.* ¶ 6, Ex. A; Hofstedter Decl. ¶ 15, Hofstedter Ex. E. Lender scheduled multiple sales of the Property but agreed to extend the sale date affording Debtor numerous opportunities to settle the amount due. Mot. ¶ 6.

On the eve of a foreclosure sale scheduled for May 2, 2022, Debtor commenced its first chapter 11 case in this Court (the "First Bankruptcy Case"). Mot. ¶ 8. [Case No. 22-70952, Dkt. No. 1]. The parties executed a stipulation to dismiss the First Bankruptcy Case, which was so-ordered by the Court on August 18, 2022. [Case No. 22-70952, Dkt. No. 64]. The stipulation afforded Debtor the opportunity to sell the Property and tender funds to Lender in an amount sufficient to satisfy its debt by March 1, 2023. *Id.* The Court entered an order dismissing the First Bankruptcy Case on October 17, 2022, and the case was closed on December 19, 2022. [Case No. 22-70952, Dkt. No 70].

Debtor was unable to sell the Property and tender funds to Lender by the agreed-upon deadline of March 1, 2023. Mot. ¶ 10. The Property was thereafter sold to Kamran Ghazvini of QWNY Corp. (the "Purchaser") at a prepetition foreclosure sale on March 2, 2023. *Id.* ¶ 11. The Purchaser delivered a deposit to the court-appointed referee. *Id.*

Debtor sought a stay of delivery of the deed in state court. *Id.* ¶ 12. On March 3, 2023, Debtor was granted a temporary restraining order. *Id.* ¶ 12, Ex. D. On September 20, 2023, the state court entered an order vacating the temporary restraining order and denying Debtor's motion to vacate the sale. *Id.* at 12. On that same day, Debtor filed a petition commencing this chapter 11 case. [Case No. 23-73500, Dkt. No. 1]. Lender filed the Stay Relief Motion on September 27, 2023. [Dkt. No. 16]. Debtor did not file written opposition to the Stay Relief Motion. Aviva Francis (counsel to Lender), Robert Michael Manners (proposed counsel to Debtor), Stan Y. Yang (Office of the United States Trustee), and Peter Kamran of Lester Korinman Kamran & Masini, P.C. appeared at the hearing held on the Stay Relief Motion on October 19, 2023 (the "October 19 Hearing").[4]

For the reasons set forth on the record at the October 19 Hearing, the Court found in favor of Lender and overruled any objection by Debtor and subsequently entered the October 23 Order.[5] Consistent with its determination on the record and

---

[4] As noted above, despite having failed to file timely written opposition to the Stay Relief Motion, the Court allowed Debtor an opportunity at the October 19 Hearing to address the merits of the Stay Relief Motion.

[5] On October 26, 2023, Debtor filed a motion to dismiss the chapter 11 case [Dkt. No. 39], citing this Court's ruling at the October 19 Hearing in support of its request for a dismissal. In the motion, Debtor indicated its intention to pursue remedies in connection with the foreclosure sale in state court.

in the October 23 Order, Debtor lost all legal or equitable interest in the Property when the Property was sold at the prepetition foreclosure sale and, as such, (i) the Property is not property of Debtor's bankruptcy estate under § 541(a)(1) and (ii) the automatic stay imposed under § 362(a) does not preclude transfer of the deed by the referee to the successful purchaser at the prepetition foreclosure sale. Additionally, as further set forth on the record and in the October 23 Order, even if the stay were applicable to prevent the transfer of the deed, Lender sufficiently demonstrated "cause" to lift the stay pursuant to § 362(d)(1) and satisfied the grounds for stay relief under § 362(d)(2).[6]

## **DISCUSSION**

### I.    **LEGAL STANDARD**

#### A.  **Property of the Estate**

The filing of a petition in bankruptcy creates an estate that consists of "all legal or equitable interest of the debtor in property as of the commencement of the case." *See* 11 U.S.C. § 541(a)(1). As stated above, on September 20, 2023 (the "Petition Date"), Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code. [Dkt. No. 1]. To determine whether Debtor had any legal or equitable interest in the Property as of the Petition Date, the Court looks to applicable state law. *See In re Smith*, 7 B.R. 106, 107 (Bankr. W.D.N.Y. 1980); *see also generally In re DeFlora Lake Dev. Assocs., Inc.*, 628 B.R. 189, 197 (Bankr. S.D.N.Y. 2021) ("Whether the debtor has

---

[6] The Court denied Lender's request for *in rem* relief for the reasons set forth on the record at the October 19 Hearing. Additionally, because the Court ruled in favor of Lender on the issue of the automatic stay, that portion of the Stay Relief Motion that sought dismissal of Debtor's chapter 11 case was rendered moot.

a legal or equitable interest in property such that it becomes 'property of the estate' under section 541 is determined by applicable state law.") (citing *Butner v. United States*, 440 U.S. 48, 54 (1979)); *In re Hilsen*, 405 B.R. 49, 56 (Bankr. E.D.N.Y. 2009) ("The question of whether a debtor has an interest in property that passes to the bankruptcy estate upon the commencement of the case . . . may be determined by the bankruptcy court and is informed by applicable state law."). In sum, nonbankruptcy law determines the "legal or equitable interests of the debtor" in property for the purpose of applying § 541(a)(1). As stated by the Supreme Court in *Butner*, "[t]he federal bankruptcy court should take whatever steps are necessary to ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued." *See Butner*, 440 U.S. at 56.

### B. The Automatic Stay

The filing of a petition for relief under the Bankruptcy Code automatically triggers the protection of the automatic stay under § 362(a). *See* 11 U.S.C. § 362(a). The automatic stay is pervasive, and "serves one of the core purposes of bankruptcy, by enabling the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *See S.E.C. v. Miller*, 808 F. 3d 623, 630 (2d Cir. 2015) (quotation marks and citations omitted).

Section 362(d) authorizes the court to grant relief from the automatic stay as follows:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section,

such as by terminating, annulling, modifying, or conditioning such stay—

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

> (2) with respect to a stay of an act against property under subsection (a) of this section, if—

>> (A) the debtor does not have an equity in such property; and

>> (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(1)-(2). Stay relief under § 362(d) is mandatory, not permissive, if the statutory conditions are met. *See In re Zeoli*, 249 B.R. 61, 63 (Bankr. S.D.N.Y. 2000) ("Congress has provided that 'the Court *shall* grant relief from the stay . . . ' for any of the reasons stated in the three subsections.").

### 1.  11 U.S.C. § 362(d)(1)

The Bankruptcy Code does not define "cause" for the purposes of determining whether stay relief shall be granted under § 362(d)(1). *See In re Breitburn Energy Partners LP*, 571 B.R. 59, 64 (Bankr. S.D.N.Y. 2017). In determining whether "cause" exists to grant stay relief for "cause," courts in this jurisdiction are guided by the Second Circuit decision in *Sonnax Indus., Inc. v. Tri Component Prods. Corp.* (*In re Sonnax Indus., Inc.*), 907 F.2d 1280 (2d Cir.  1990). In *Sonnax*, the Second Circuit identified the following twelve factors (the "Sonnax factors") for purposes of determining whether to lift the stay under § 362(d)(1):

> (1) whether relief would result in a partial or complete resolution of the issues;
> (2) lack of any connection with or interference with the bankruptcy case;
> (3) whether the other proceeding involves the debtor as a fiduciary;
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
> (5) whether the debtor's insurer has assumed full responsibility for defending

it;

(6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286. "Not every one of these factors will be relevant in every case." *See Spencer v. Bogdanovich (In re Bogdanovich),* 292 F.3d 104, 110 (2d Cir. 2002) (citing *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999)). "The ultimate determination whether to lift a stay depends upon the facts underlying a given motion." *Id.*; *see also In re AMR Corp.*, 485 B.R. 279, 295 (Bankr. S.D.N.Y. 2015) (citing *Bogdanovich* and stating that courts recognize that "for cause" is "a broad and flexible concept that must be determined on a case-by-case basis"). "The Court need only consider the relevant factors." *See In re Containership Co., (TCC) A/S,* 466 B.R. 219, 225 (Bankr. S.D.N.Y. 2012). Notably, the burden rests with the moving party to make an initial showing of "cause" for relief from the stay, *Bogdanovich*, 292 F. 3d at 110, failing which stay relief will be denied, *Mazzeo*, 167 F. 3d at 142.

## 2.  11 U.S.C. § 362(d)(2)

Relief from the stay under § 362(d)(2) requires a showing that the debtor has no equity in the property at issue and that the property is not necessary for an effective reorganization. *See In re Garcia*, 584 B.R. 483, 489 (Bankr. S.D.N.Y. 2018) (citing 11 U.S.C. § 362(d)(2)). The party requesting relief under § 362(d)(2) has the

"burden of proof on the issue of a debtor's equity in property." *See* 11 U.S.C. § 362(g)(1). Courts calculate the equity in a property by subtracting the total claims from the value of the property. *In re Garcia,* 584 B.R. at 489. If the value of claims against a property exceeds the value of the property, the debtor has no equity in the property. *Id.* If the movant shows that the debtor lacks equity in the property, then by reason of the allocation of the burden of proof under § 362(g)(2), a debtor opposing stay relief must then show "that there [is] a reasonable possibility of a successful reorganization within a reasonable time" and that the property is "essential" to such a reorganization. *Id.*; *see also generally United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 376 (1988) ("What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.*" (emphasis in original)).

## II.    ANALYSIS

### A. Because the Property Was Sold at a Prepetition Foreclosure Sale, the Property Never Became Property of Debtor's Estate, and the Automatic Stay Does Not Apply to Preclude Delivery of the Deed to the Purchaser.

It is well established that, under New York law, "[t]he owner of property subject to a foreclosure sale may redeem the property at any time prior to a foreclosure sale, but once the sale takes place, the right to redeem is extinguished as a matter of law even if a deed has not been delivered." *See In re Rey*, No. 18-12809 (SMB), 2019 WL 1077007, at *2 (Bankr. S.D.N.Y. Mar. 7, 2019). The Second Circuit has acknowledged that "[t]his principle . . . has been part of New York law for over a

century." *See In re Rodgers*, 333 F.3d 64, 67 (2d Cir. 2003) (quoting *Citibank, N.A. v. Press Realty Corp.*, 139 Misc. 2d 558, 560, 528 N.Y.S.2d 307, 308 (N.Y. Sup. Ct. 1988)).

Courts have repeatedly recognized that a debtor's interest in real property is extinguished by a foreclosure sale, regardless of whether the deed to the property has been delivered. *See, e.g.*, *In re Cerrato*, 504 B.R. 23, 29-30 (Bankr. E.D.N.Y. 2014); *In re Nimai Kumar Ghosh*, 38 B.R. 600, 602 (Bankr. E.D.N.Y. 1984) (observing that "a debtor loses all equitable and legal interest in real property validly sold at foreclosure whether or not the deed to that property has been delivered to the purchaser"); *In re Smith*, 7 B.R. at 107 ("In New York, a valid Judgment of Sale . . . and the sale of the real property by the appointed referee[] effectively cut off the legal and equitable interests the mortgagor has in the mortgaged premises, since these two things serve to transfer the interests of those who have an estate in the land."); *In re Butchman*, 4 B.R. 379, 380 (Bankr. S.D.N.Y. 1980) (concluding that a "foreclosure sale effectively cut off the debtors' legal title or equity of redemption in the mortgaged premises"). Therefore, where real property has been sold at a prepetition foreclosure sale, such property does not constitute property of the debtor's estate for purposes of § 541(a)(1), "even though the debtor may retain bare legal title until the deed is delivered." *See In re Rey*, 2019 WL 1077007, at *2.

Such is the case here. The foreclosure sale took place on March 2, 2023—*after* the First Bankruptcy Case was closed, and *before* the current chapter 11 case was commenced. As such, the Property does not constitute property of Debtor's bankruptcy estate. *See In re Rey*, 2019 WL 1077007 at *2; *In re Cerrato*, 504 B.R. at

29-30; *Darnley v. Ameriquest Mortg. Co.*, No. 06-CV-4265 (DLI), 2010 WL 118143 (E.D.N.Y. Jan. 8, 2010).

Furthermore, as stated on the record at the October 19 Hearing and in the October 23 Order, the automatic stay under § 362(a) triggered by the commencement of Debtor's chapter 11 case, however pervasive in scope, does not preclude delivery of the deed to the Purchaser. Courts in this circuit have been confronted with this issue and have concluded that the stay does not prevent the transfer of the deed. *See, e.g.*, *In re Upham*, 48 B.R. 695, 696 (Bankr. W.D.N.Y. 1985); *In re Smith*, 7 B.R. at 107-08; *see also generally In re Rodgers*, 333 F.3d at 69 ("Although [Debtor] may have retained some 'incidents of ownership . . .' between the time of the sale and the delivery of the deed . . . the delivery of the deed was a ministerial act that did not impair any property interest retained by [Debtor] and, thus, was not subject to the automatic stay."); *In re Rey*, 2019 WL 1077007, at *2 (noting that "the automatic stay does not preclude the ministerial act of delivering the deed").

Notably, in *Smith*, the Western District concluded that the post-petition transfer of a deed to real property was not barred by the automatic stay where the property was sold prior to the filing of the petition and, therefore, not part of the debtor's estate. *See In re Smith*, 7 B.R. at 108. Relying on *Smith*, the *Upham* court similarly held that "the foreclosure sale purchaser [was] free to accept delivery of the referee's deed and complete the sale[,]" where the real property at issue was sold prepetition and debtor thus had no legal or equitable interest therein as of the commencement of the case. *In re Upham*, 48 B.R. at 696.

**B. Even if the Automatic Stay Applied, Grounds Exist to Lift the Stay Pursuant to Sections 362(d)(1) and (d)(2) to Allow the Referee to Deliver the Deed to the Purchaser.**

**1. Cause Exists to Lift the Stay Under 11 U.S.C. § 362(d)(1).**

Even if the automatic stay applied to prevent delivery of the deed, the Court concludes that cause exists to lift the stay under § 362(d)(1) for the following reasons. First, Debtor has failed to make any post-petition payments to Lender, Mot. ¶¶ 29-33, nor has Debtor offered adequate protection of Lender's interest in the Property in the form of payments or otherwise as permitted under § 361. Thus, Debtor has failed to meet its burden of proof on the issue of adequate protection of Lender's interest in the Property. *See* 11 U.S.C. § 362(g)(1).

Second, the *Sonnax* factors that are applicable to this case weigh in favor of granting stay relief to permit the delivery of the deed to the Purchaser. With respect to the first *Sonnax* factor, stay relief would result in a resolution of the issue relating to the Property, as it would allow the referee to transfer the deed to the Property to the Purchaser. As for the second *Sonnax* factor, granting relief from the stay would not significantly interfere with the chapter 11 case, as there is no equity in the Property and Debtor has not demonstrated there is a reorganization in prospect. *See generally Timbers*, 484 U.S. at 376; *see also supra* Section I.B.2.

As for the fourth *Sonnax* factor, there is a "specialized tribunal with the necessary expertise" to resolve disputes related to the foreclosure sale. This Court noted at the October 19 Hearing that state court is the appropriate forum for any forthcoming challenge to the foreclosure sale by Debtor, as the state court clearly has

the expertise to address foreclosure issues. *See In re Residential Capital, LLC*, 2012 WL 3423285, at *7 (Bankr. S.D.N.Y. Aug. 14, 2012). The seventh *Sonnax* factor also supports granting relief from the automatic stay, as litigation in state court relating to the foreclosure sale will not prejudice creditors because there is no equity in the Property. It is a two-party dispute.

With respect to the tenth *Sonnax* factor, the interests of judicial economy are met by allowing the parties to proceed in state court should there be a subsequent challenge by Debtor to the transfer of the deed to the Purchaser—an issue the state court dealt with before Debtor commenced this chapter 11 case.

As to the twelfth *Sonnax* factor, the balance of the harms weighs in favor of granting relief from the stay to permit transfer of the deed to the Purchaser. Lender has been attempting to exercise its rights for at least six years and has given Debtor ample opportunity to sell the Property or take such other measures relating to the Property that would satisfy Lender's mortgage debt. Lender commenced a foreclosure action with respect to the Property in state court in 2017. After years of litigation, Lender obtained a judgment of foreclosure and sale on January 15, 2019. Debtor filed its chapter 11 petition in the First Bankruptcy Case on the eve of a scheduled foreclosure sale on May 2, 2022. The parties stipulated to the dismissal of the First Bankruptcy Case, affording Debtor yet another opportunity to sell the Property and tender funds to Lender by March 1, 2023. [Case No. 22-70952, Dkt. No. 64]. Debtor failed to meet this deadline, and the Property was then sold at a foreclosure sale. Debtor sought to stay delivery of the deed to the Purchaser by moving for injunctive

relief in state court. Although a temporary restraining order was entered by the state court on March 3, 2023, the state court vacated the restraining order on September 20, 2023. Having been denied relief in state court, Debtor then sought refuge in this Court by filing its second chapter 11 petition on September 20, 2023, seeking to invoke the automatic stay to halt delivery of the deed further frustrating the legitimate efforts of Lender to exercise its rights and remedies in respect of the Property. Additionally, in weighing the twelfth factor, the Court observes that Debtor has continuously failed to pay real estate taxes, thus causing Lender to expend funds in connection with the Property, and Debtor has not made any payments on the Mortgage.

Accordingly, in light of the applicable *Sonnax* factors, to the extent the automatic stay is implicated to prevent the post-petition transfer of the deed, cause exists to grant Lender relief from the automatic stay to permit the transfer of the deed to the Purchaser.

## 2. In the Alternative, the Stay Must Be Lifted Because Both Prongs of § 362(d)(2) Are Satisfied.

As noted at the October 19 Hearing, Lender has demonstrated that there is no equity in the Property, and Debtor did not meet its burden of proving that the Property is necessary to an effective reorganization that is in prospect. *See supra* Section I.B.2. Therefore, the stay must be lifted pursuant to § 362(d)(2). *See* 11 U.S.C. § 362(g)(1)-(2) (allocating burden of proof on stay relief motion).

A debtor lacks equity in a particular piece of property when the total of the claims secured by the property exceeds its value. *See Barcelona Cap., LLC v. Neno*

*Cab Corp.*, 648 B.R. 578, 591 (E.D.N.Y. 2023) (quoting *In re Mader*, No. 19-cv-2048, 2021 WL 1729472, at *6 (E.D.N.Y. Mar. 31, 2021)). Here, Debtor lists the value of the Property as $800,000 in its  Schedule A/B and Official Form 206Sum. [Dkt. Nos. 20, 21]. Debtor lists the total amount of claims secured by the Property as $1,244,408.68 on Official Form 206Sum. [Dkt. No. 20; *see also* Schedule D, Dkt. No. 22]. By Debtor's own admission, the debt secured by the Property exceeds its value. Thus, Debtor lacks equity in the Property.

Because Debtor lacks equity in the Property, it must show "that there [is] a reasonable possibility of a successful reorganization within a reasonable time" and that the Property is "essential" to such a reorganization. *See In re Garcia*, 584 B.R. at 489; *see also* 11 U.S.C. §§ 362(d)(2)(B), 362(g)(2). This requires that the Property be essential to an effective reorganization that is "in prospect." *See Timbers*, 484 U.S. at 376. Debtor fell short of meeting its burden as it failed to show that a reorganization is in prospect in this second chapter 11 case and that the Property constitutes property of the estate under § 541(a)(1). Accordingly, stay relief is warranted under § 362(d)(2).

At the October 19 Hearing, in voicing objection to the transfer of the deed, Debtor sought to challenge the foreclosure sale in this forum by maintaining that the purchase price at the prepetition foreclosure sale is less than the fair market value of the Property. For the reasons set forth on the record, this argument is unavailing. As a preliminary matter, Debtor did not present any evidence of the value of the Property. In any event, as noted on the record, the Supreme Court has recognized

that "a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property is the price in fact received at the foreclosure sale, so long as all of the requirements of the State's foreclosure law have been complied with." *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 545 (1994). Debtor did not present any evidence that the prepetition foreclosure sale was not conducted in accordance with applicable state law.

## **CONCLUSION**

For the foregoing reasons, and as set forth on the record at the October 19 Hearing and in the October 23 Order, the Court granted the Stay Relief Motion.



**Dated: November 7, 2023**
     **Central Islip, New York**

**Louis A. Scarcella**
**United States Bankruptcy Judge**